**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERRENCE BRUCE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE WEDGE MEDICAL CENTER, | : | |
| INC., et al., | : | No. 20-4058 |
| Respondents. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                          **August 11, 2021**
**U.S. Magistrate Judge**

 Plaintiff Terrence Bruce was terminated from his position as a Drug & Alcohol Therapist at Wedge Medical Center ("Wedge") on February 22, 2019.  He has sued his former employer for retaliation in violation of Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e-3a, et seq., and the Pennsylvania Human Rights Act (PHRA), 43 Pa. C.S.A. § 951 et seq.  Wedge seeks summary judgment, asserting Bruce has failed to produce evidence from which a jury could find in his favor.  See SJ Mot. (doc. 26).

 Wedge's motion is granted.  The first requirement for a retaliation claim under Title VII or PHRA is that the plaintiff engage in a "protected activity," and viewed in the light most favorable to Bruce the sexual harassment complaint he lodged against his supervisor based on a single comment made in a group setting does not qualify as protected under either statute.

## I.    Legal Standard

 Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party.  See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010).  If reasonable minds

could conclude that there are sufficient facts to support a plaintiff's claims, summary judgment

should be denied.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It should be

granted if no "reasonable jury could return a verdict for the nonmoving party," based on the

evidentiary record.  Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

II.     **Facts Most Favorable to Bruce**

Bruce began working for Wedge as an assistant counselor in January 2016.  Pl. Resp.

(doc. 29), Ex. B at 22.  He was promoted to a counselor position in January 2017, and in March

2018, he was promoted to program coordinator of mental health services at Wedge's

Germantown facility.  Id. at 24, 34.  As program coordinator, Bruce supervised several

employees.  Id. at 41.

In September 2018, two staff members filed grievances against Bruce, alleging four

violations of Wedge policy: (1) disorderly conduct; (2) abuse of clients; (3) unauthorized

distribution of confidential material; and (4) unethical use of authority.  SJ Mot., Ex. H at 4-7.

Bruce was suspended with pay while Wedge investigated the grievances.  Id. at 9.  Wedge found

the grievances against Bruce were founded and demoted him from program coordinator to

counselor.  Id.  Bruce unsuccessfully appealed to Wedge CEO Jason McLaughlin.  Id. at 1.

In November 2018, Bruce filed a grievance against his supervisor, alleging five violations

of Wedge policy: (1) sexual harassment; (2) interference with his relationship with clients; (3)

unauthorized distribution of management materials; (4) overruling his authority in front of staff;

and (5) abuse of clients.  Pl. Resp., Ex. A.  Bruce's third and fifth complaints were based on the

same incidents that had resulted in his own demotion.  Id.  His sexual harassment complaint was

based on his supervisor's joking reference to masturbation in a June 2018 group meeting that

Bruce contended left him feeling "extremely uncomfortable." Id.  The first two paragraphs of

Bruce's grievance read:

> I am filing a grievance with HR reporting less than professional behaviors from
> the Director of Psychiatric Rehabilitation Michelle Campbell.
>
> During a staff meeting facilitated by Michelle Campbell at Germantown REC
> sometime in June 2018 regarding preparing for the upcoming inspection and staff
> dealing with stress, Ms. Campbell referenced "Masturbation" as a means of
> relieving stress according to Jessica Griffith.  This was witnessed by the entire
> Germantown staff and drew laughter from some attendees, but made me feel
> extremely uncomfortable coming from the Director of Psychiatric Rehabilitation.
> Although I thought this was an inappropriate comment during a staff meeting, I
> made an attempt to work through it.

SJ Mot., Ex. H at 10.

Although Bruce conceded the comment was not directed at him and may have been made

in passing, he testified:

> I know it just offended me.  I know it set me off and made me feel very
> uncomfortable whereas I lost focus on what was going on in the meeting because
> who mentions masturbation during a meeting?  I mean, you know, in the
> company, who does that?  Who does that?  The whole thing just threw me.

Pl. Resp., Ex. B at 95.

Bruce testified that he filed the grievance against his supervisor:

> Because I felt as though they gave me a write up for distributing – when was it –
> unauthorized distribution of paperwork that she was present for, but again still
> there was no disciplinary action taken against her.  So I felt as though that was
> unfair and discriminatory.

Id. at 91.

Wedge's "Non-Harassment" policy states:

> The Wedge will neither engage in nor tolerate sexual or any other form of
> unlawful harassment.  By way of example only, the following behaviors and/or
> communications are inappropriate and as such prohibited, regardless of whether
> they are legal: . . . [s]exual, [s]uggestive, or [g]ender-based . . . jokes. . . . It is of
> no defense to inappropriate behavior that there was no bad intent, that it was only
> a "joke" or that it was not directed at any person.

Pl. Resp., Ex. J.

Bruce's complaints were investigated by two supervisors and deemed unfounded by the end of the month.  SJ Mot., Ex. H at 19.  Once Bruce inquired about the investigation and learned its outcome, he unsuccessfully appealed the result to Wedge's CEO, contending Wedge policy required Human Resources, not supervisors, to conduct grievance investigations.  Id. at 20.  He complained the interviewees failed to even acknowledge Campbell's sexual remark during the investigation, even though "after Michelle made that comment, every other staff laughed or found it amusing but him."  Id.  He was asked to repeat her remark "verbatim" and stated:

> Michelle was discussing stress and how everyone may be stressed and worked up because of the inspection/new program changes and other things.  She was discussing how to relieve stress and . . .  she said, 'Jessica Griffith is a proponent of masturbation as a form of relieving stress.'

> Id.

> He later testified:

> I didn't like how it was investigated when the policy simply clearly states that conversations about sexual -- are prohibited and that there was no defense that it was a joke, but yet still there was no action taken when I made that complaint. . . . And plus the way it was investigated.  It wasn't investigated as the rules and policies state.  It wasn't first investigated by HR as the Wedge policy clearly states.

> Pl. Resp., Ex. B at 108.

Human Resources re-investigated Bruce's grievance, asking specifically about the masturbation comment, but only one staff member could recall the comment, was not offended by it, and was unsure that it had been made by Campbell.  SJ Mot., Ex. H at 31, 37, 39, 41, 44.

Shortly after Bruce's appeal, two of Wedge's clients filed grievances against him.  Id. at 24-29, 57.  On January 8, 2019, a client alleged that Bruce had yelled slurs at him during a

4

disagreement over the information required on a drug testing slip.  Id. at 24-29, 32-36, 47-51.

On January 24, 2019, another client alleged Bruce had violated Wedge policy by making

derogatory remarks regarding medication-assisted addiction recovery.  Id. at 57.

      Human Resources investigated the claims against Bruce, and Bruce denied making either

remark.  Id. at 58-59.  Multiple witnesses, however, corroborated the allegations in the

grievances.  Id. at 24-29, 32-36, 47-51.  On February 22, 2019, Wedge terminated Bruce.  Pl.

Resp., Ex. F.

## III.    Discussion

      Wedge contends it is entitled to summary judgment on Bruce's claim that he was fired in

retaliation for pursuing his sexual harassment claim.  SJ Mot. at 14.

      Title VII and the PHRA prohibit retaliation against employees who have "opposed"

discriminatory activity or "participated in" an investigation or complaint related to

discriminatory activity.  42 U.S.C. § 2000e-3a; 43 P.S. §§ 955(d).[1]  To establish a prima facie

case of retaliation, Bruce must show: (1) he engaged in protected activity; (2) he suffered an

adverse employment action; and (3) a causal connection between his protected activity and the

adverse action.  See Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007).[2]

---

[1]    PHRA and Title VII claims are analyzed co-extensively.  Hussein v. UPMC Mercy
Hosp., 466 F. App'x 108, 111 (3d Cir. 2012) ("we have held that the PHRA is to be interpreted
as identical to federal anti-discrimination laws except where there is something specifically
different") (citing Fogleman v. Mercy Hosp., 283 F.3d 561, 567 (3d Cir. 2002)).

[2]    Under the McDonnell Douglas burden-shifting framework, if Bruce makes out a prima
facie case, the burden of production shifts to Wedge to provide a "legitimate, non-retaliatory
reason" for his termination.  Marra, 497 F.3d at 300; see generally McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973).  Once Wedge has provided a legitimate explanation for his firing,
Bruce can avoid summary judgment only if he has evidence sufficient to support a jury finding
that Wedge's explanation is merely a pretext.  Id.

Bruce need not prove his sexual harassment claim against his supervisor to establish that he engaged in protected activity by reporting it.  Kengerski v. Harper, No. 20-1307, 2021 WL 3199225, at *3 (3d Cir. July 29, 2021).  He must show that he held only "an objectively reasonable belief, in good faith, that the activity [he opposed] is unlawful under Title VII."  Id. (citing Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006)).  "The crux of a retaliation claim is reasonableness."  Id. at *7.  The Third Circuit asks, "[c]ould a reasonable person, standing in [Bruce's] shoes, have believed [his supervisor's] behavior violated Title VII?"  Id. at *3.

The evidence viewed in the light most favorable to Bruce fails to meet that legal threshold.[3]  "[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. . . . [and] simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001).  A "complaint about workplace behavior that is so minor and isolated that . . . '[n]o reasonable person could have believed that [it] ... violated Title VII's standard'" is not protected activity.  Kengerski v. Harper, 2021 WL 3199225, at *4.   Bruce alleges a single isolated comment that fails to establish

---

[3]     For purposes of this Motion, I accept Bruce's version of events, Ray, 626 F.2d at 173, including that Campbell made the comment and Bruce was offended by it, even though no staff member identified any sexual harassment or innuendo or found Campbell's interactions unprofessional when initially interviewed during the investigation of Bruce's complaint, SJ Mot., Ex. H at 16-18.  Most staff could not recall the masturbation comment even when specifically asked about it during the second investigation of Bruce's grievance, id. at 37, 39, 41, 44, and the only staff member who could remember the comment stated in an interview that Campbell may not have made the reference to masturbation itself but only a joke in response to the comment and that Bruce was himself laughing, id. at 31.  That staff member later testified that an intern had made the initial reference to masturbation, not Campbell, SJ Mot., Ex. F at 8-9.

severe or pervasive sexual harassment.  Even assuming its truth, the comment was a one-time, joking reference and not the type of systemic behavior contemplated by Title VII.

Bruce, who claims his supervisor's comment made him "extremely uncomfortable," obliquely acknowledges that the real problem with her comment was that it violated Wedge's "zero tolerance" for sexual references in the workplace policy, not Title VII.  Pl. Resp., Exs. A, B at 91, 108.  Mere violations of company policy are not "protected activity."  Kerstetter v. Pennsylvania Dep't of Corr. SCI-Coal Twp., No. 08-1984, 2010 WL 936457, at *11 (M.D. Pa. Mar. 12, 2010) (no protected activity when plaintiff complained about relationship that "may have been improper based upon company policy, [but] was not violative of Title VII."); see also Sproull v. Golden Gate Nat. Sr. Care, LLC, No. 08-1107, 2010 WL 1409658, at *10 (W.D. Pa. Apr. 1, 2010) (dismissing retaliation claim because "there is no genuine issue with respect to the material fact that Plaintiff had no objectively reasonable belief that the behavior reported violated Title VII" when Plaintiff reported offensive comments she suspected violated company policy even though they were not severe or pervasive).[4]

---

[4]     Bruce's primary complaint was not sexual harassment, but his feeling that a social clique of colleagues was treated permissively while he was held strictly to the company's policies.  See Pl. Resp., Ex. A (Bruce's sexual harassment complaint comprises one paragraph of 5-page grievance); Ex. B at 91 (Bruce's testimony that he suffered from "discrimination" and "harassment" because he was demoted for disclosing a confidential document in the presence of his supervisor, who was not disciplined for the same violation), 104 (complaining that allowing his supervisor's supervisors to investigate his grievance against her instead of Human Resources violated Wedge policy), 108 (noting that Wedge policy prohibited any reference to sexual topics).  An "inquiry into whether plaintiff had a viable claim of discrimination when [he] was discharged for allegedly violating a company policy when others who were similarly situated were not, is a very different inquiry than whether plaintiff was subject to severe and pervasive discrimination and whether [he] engaged in protected activity."  Morrison v. Nat'l City Home Loan Serv., Inc., No. 07-99, 2007 WL 4322329, at *4 (W.D. Pa. Dec. 7, 2007).  To the extent that Bruce filed grievances against his supervisor to highlight this disparate treatment to his employer, his dispute targets enforcement of company policies, not unlawful discrimination.

Because Bruce has not produced sufficient evidence from which a jury could find that he engaged in protected activity, his retaliation claims are dismissed.

An appropriate order follows.